UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

                                    File No: 1:11-cr-49

v

                                    HON. ROBERT HOLMES BELL

SHANE DEWAYNE JOHNSON,

      Defendant.

_____/

**O P I N I O N**

This matter comes before the Court on Defendant Shane Dewayne Johnson's Motion to Suppress. (Dkt. No. 16.) The Court conducted a hearing on the motion on June 29, 2011. For the reasons contained herein, the motion will be denied.

**I. Factual Background**

On May 24, 2010, a man wearing dark clothing, a mask, and gloves fired seven shots at another person. Witnesses watched the shooter then run out of sight in the direction of the Ingham Regional Medical Center. A short time later, one witness saw a man he thought to be the fleeing shooter – although wearing different clothes – jump over the hospital's perimeter fence and run towards the hospital building.

According to the government, hospital video surveillance from this time shows Defendant carrying a dark bundle through the hospital. Recordings from a short time later show him checking into the emergency room without the bundle. A search of the hospital

turned up a set of dark blue mechanic's overalls, a mask, a hat, gloves, and the firearm used to fire the shots bundled in a trash can in an unoccupied room in the hospital.

On February 16, 2011, a grand jury indicted Defendant, charging him with being a felon in possession of that firearm. He was arrested on March 1 and was immediately taken to a Lansing Police Department interview room. There, ATF[1] Special Agent Steven Bailey and Lansing Police Department Detective Lee McCallister interviewed him for approximately two hours and forty-five minutes. That interrogation became the subject of the present motion to suppress. The entire interrogation was recorded on video, and the government supplied the Court with a copy of that recording along with their brief opposing the motion.

During the interrogation, both officers told Defendant that they would like him to provide assistance to law enforcement on other matters in exchange for their indicating his substantial assistance to the prosecuting Assistant United States Attorney. Johnson stated, "I want to see what I got for you. What I can do." (Dkt. No. 22, Resp., Attach. 1, Interview Transcript at 20:17; Video Recording at 17:31.42 hrs.)

Prior to questioning, Defendant read his *Miranda* rights from a preprinted form and then had them read aloud to him. (Tr. at 25:26-27:1; Video at 17:37.05-17:38.28 hrs.) He signed an included preprinted waiver form indicating that he understood and waived his right to remain silent and that he agreed to answer questions. That waiver is not in dispute.

---

[1]The Bureau of Alcohol, Tobacco, Firearms, and Explosives

The question presented in Defendant's motion is whether he subsequently revoked the waiver and invoked his right to remain silent.

The exchange which Defendant now claims was an invocation of his right occurred about twenty minutes into the interrogation. It was an exchange between Defendant and ATF Special Agent Bailey when Detective McCallister had stepped out of the room:

> Bailey: How did you get caught up in this mess then?
>
> Johnson: Because, it just, being at the wrong place with the wrong people. You know what I'm saying, like, and, and it's crazy because I'm like everybody knows exactly what really happened. You know what I'm saying?
>
> . . . .
>
> Bailey: What are you talking about, your case or other stuff?
>
> Johnson: My case, any of my cases. Every one of my cases. Like if you, if you look at my history and stuff like and really, every one of my cases, there was somebody there. I was never by myself.
>
> Bailey: Well I mean, in this particular case from what I read and everybody we've talked to, kinda, I mean running into the hospital, and all that stuff, man, I mean –
>
> Johnson: Right. And see –
>
> Bailey: It's pretty open and shut.
>
> Johnson: And I, I, and it seems like that, you know, and I could, you know what I'm saying, like on some (inaudible) like you know what I'm saying, like I, I can't, **I don't really even want to get into it**, you know what I'm saying –
>
> Bailey: Yeah, I don't want to get into your case, you know what I'm saying –

3

(Tr. at 46:21-47:26; Video at 17:57.56-17:59.13 hrs) (emphasis added).

The conversation then shifted to Defendant's acquaintances and his music career. Approximately twenty minutes after the alleged invocation of the right to remain silent, the topic of Defendant's present charge came up again; this time after Agent Bailey had stepped out of the room:

> McCallister: Do you want to talk about that incident at all today?
>
> Johnson: What?
>
> McCallister: The incident that got you arrested?
>
> Johnson: Man, –
>
> McCallister: I mean, is there, was there an underlying, uh, you know, it will only help you in the long run as far as giving a justification for the actions that were taken.
>
> Johnson: Shit, I mean, that's what I'm trying to tell you, and like, dude already said it. He, you know what I'm saying, he going to tell you his self. Like it wasn't me, you know what I'm saying? But I'm not saying I wasn't around. . . .

(Trans. at 68:20-69:3; Video at 18:20.02-18:20.32 hrs.) Defendant later speaks extensively about the gun, describing the gun, telling Special Agent Bailey when he acquired it, how and from whom he acquired it, and how much he paid for it. (Video at 18:35.09 hrs.) Defendant now moves to suppress his statements, claiming that continuing to question him about the present charge after his invocation of his right to remain silent on those issues violated his rights. (Mot. ¶ 7.)

## II. Discussion

**A.)   Relevant Law**

The Supreme Court in *Miranda* held "that certain warnings must be given before a suspect's statement made during custodial interrogation could be admitted in evidence." *Dickerson v. United States*, 530 U.S. 428, 431-32 (2000); *see also Miranda v. Arizona*, 384 U.S. 436 (1966). The warnings address the right to remain silent. *Miranda*, 384 U.S. at 479. A waiver of this right may be express or implied. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). In this case, Defendant's initial waiver of his right was express and is undisputed. (*See* Resp., Attach. 2, Statement of Rights and Waiver.)

The right to remain silent can nonetheless be invoked even after waiver. *See Miranda*, 384 U.S. at 473-74 ("Once warnings have been given, . . . [i]f the individual indicates in any manner, at any time . . . during questioning, that he wishes to remain silent, the interrogation must cease."). "[N]o ritualistic formula or talismanic phrase is essential in order to invoke the privilege against self-incrimination," *Emspak v. United States*, 349 U.S. 190, 194 (1955), but the invocation of the right to remain silent must be unambiguous and unequivocal to constrain officers from further questioning, *Berghuis v. Thompkins*, 130 S.Ct. 2250, 2259 (2010). In order to avoid difficulties of proof and provide guidance to officers conducting interrogations, the inquiry into whether the right has been invoked is an objective one. *Franklin v. Bradshaw*, 545 F.3d 409, 414 (6th Cir. 2008) (citing *Davis v. United States*, 512 U.S. 452, 459 (1994)). "[A] suspect must assert his right to remain silent

with sufficient clarity that a reasonable officer would perceive it as such under the circumstances." *Id.* (citing *United States v. Hurst*, 228 F.3d 751, 759 (6th Cir. 2000)). "If an accused makes a statement concerning the right to [remain silent] that is ambiguous or equivocal or makes no statement, the police are not required to end the interrogation or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights." *Berghuis*, 130 S.Ct. at 2259-60 (internal quotation marks and citations omitted).

Thus, this Court must decide whether Defendant asserted his right to remain silent with sufficient clarity that a reasonable officer would perceive it as such under the circumstances. In making this determination, the Court is required to consider the context in which the supposed assertion was made. *See Bird v. Brigano*, 295 F. App'x 36, 38 (6th Cir. 2008).

**B.)    Application**

Defendant argues that he unambiguously invoked his right to remain silent. The Court disagrees, and Defendant's motion will be accordingly denied.

In different circumstances, the Court could agree that Defendant's statement, "I don't really even want to get into it," could constitute an invocation of his right. *See, e.g.*, *McGraw v. Holland*, 257 F.3d 513 (6th Cir. 2001) ("When Tina kept saying, without qualification, that she just did not want to talk about the subject – making these declarations after she had been formally advised of her right of silence – it would simply not be reasonable to take her words at less than face value."). But, as the Sixth Circuit has recently

and clearly stated, "context matters." *Bird*, 295 F. App'x at 38. Here, context is everything.

The Court has had the opportunity to review in its entirety the video recording of Defendant's interrogation. The conversation was lengthy, and its topics were wide-ranging. Defendant and the officers talked about where Defendant is from, Defendant's family and home situation, Defendant's musical career, the officer's tastes in music, and potential nicknames for the City of Lansing. At one point, Defendant performed a rap for the officers. Allusions to the present case are made throughout. Both Defendant and the officers are clearly attempting to build rapport with the party on the other side of the table. And both sides had good reasons for doing so – the officers wanted help making cases and Defendant wanted his cooperation reported to the United States Attorney. The interrogation was, at its core, a negotiation between parties with potentially complimentary interests, and Defendant employed any number of gambits trying to get the most he could out of the situation. But Defendant never expressed reluctance or reticence to speak with either Detective McCallister or Special Agent Bailey.

In that context and in the context of the specific conversation in which it was offered, Defendant's "I don't really even want to get into it," (Tr. at 47:23-24; Video at 17:59.09 hrs.), sounds more like a loss for words than the invocation of a constitutional right, especially given that he immediately proceeds to "get into it." *See Tolliver v. Sheets*, 594 F.3d 900, 919 (6th Cir. 2010) ("[E]ven if he did invoke his right to remain silent with these two statements, he immediately (and without police prompting) volunteered additional

7

information. He cannot have it both ways: if he wanted to invoke his *right* to remain silent, he then needed to *remain* silent.") (emphasis in original). The Sixth Circuit has found that courts were not unreasonable in determining that far less ambiguous and far less equivocal statements were insufficient to trigger interrogators' obligation to cease questioning. In *Bird v. Brigano*, the Sixth Circuit addresses two incidents which the defendant claimed amounted to unequivocal demands to cease questioning:

> [1.] The first incident occurred about a half an hour into the interrogation, when Bird stated that "there's no sense me sitting here trying to say what happened with me . . . because as usual, when it comes to Derrick Bird, he's guilty." He then stood up, saying, "You take me in; get booked, man." The detectives told him to sit back down. Bird then continued to answer questions. [2.] The second incident occurred sometime later, when a third detective entered the room and told him: "This is your chance to talk about it. You been talking about it [to others]." Bird replied: "Everything's right there in the paper. I'm done talking about it."

295 F. App'x at 38. The Sixth Circuit held that neither of these, when viewed in context, were necessarily unequivocal invocations of the right to remain silent:

> Bird argues that his standing up, especially when coupled with his later statement that he was "done talking about it," could be viewed as an invocation of his right to silence. And taken in isolation, out of context, that is not an unreasonable conclusion. But context matters. When Bird stood up and talked about getting taken in (despite already being at the police station) the state court was not unreasonable in finding that his actions did not amount to an "unambiguous" request for counsel. As the district court observed, this could reasonably be interpreted as simply an act of frustration, not an attempt to end the interview.

*Id*. So too in *Franklin v. Bradshaw*, the Sixth Circuit found that a court was not unreasonable in determining that a defendant's right to remain silent was not invoked. 545

8

F.3d at 415. In that case, the state court recorded the conversation between the interrogators and the 16-year-old defendant, Franklin, as follows:

> [T]he officers ask Franklin, "do you understand your rights," and he answers "yes, sir." The officers ask Franklin, "do you want to tell us your side of the story." Franklin answers "no." Franklin never states during the questioning that he wishes to remain silent, however he does put his head down and avoid eye contact with the officers. The officers inform Franklin that they know he was at the scene because a number of witnesses place him there. Franklin denies being at the scene and states "how you goin' to tell me where I was, I know where I was." . . . The officers ask Franklin "is that your response, is that what you're going with," and Franklin responds, "I ain't did nothing."

*Id.* at 412-13 (brackets omitted). Under those circumstances, despite the defendant explicitly saying that he did not want to tell his side of the story, the Sixth Circuit held that "it was not an unreasonable application of *Miranda* and *Davis* for the state court to conclude that Franklin had not unambiguously or unequivocally asserted his right to remain silent by this statement." *Id.* at 415. The Circuit Court thus held that the statements were admissible. So too here, in context, Defendant did not unambiguously or unequivocally assert his right to remain silent.

At the hearing on this motion, Defendant's counsel argued that Defendant unambiguously invoked his right to remain silent because Defendant and Special Agent Bailey made an agreement not to talk about the present case. The Court finds no such agreement. It is clear from both the video recording of the interrogation and the testimony that Special Agent Bailey offered at the hearing that discussing the present charges was not Bailey's primary goal in questioning Defendant. Bailey had bigger fish to fry. Bailey

9

wanted to know whether Defendant had contacts in the Lansing area who could supply him with illegal guns and large quantities of illegal drugs. He wanted to know whether Defendant would be valuable to ATF on the streets. He wanted to know whether he should recommend to the United States Attorney that Defendant should be detained. That is why Bailey didn't want to get into Defendant's present case; in Bailey's mind, the present case was "pretty open and shut." (Tr. at 47:20; Video at 17:59.03 hrs.) Bailey, it is clear from both the interview and his testimony, didn't want to get into the facts of Defendant's case at that early stage of the interrogation because he hoped to move on to more interesting topics. The Court finds that, inasmuch as there may have been an agreement between Bailey and Defendant not to talk about the case, it was only an agreement not to talk about the case at that time; it was an agreement to move the conversation forward. To the extent that the "agreement" gives context to Defendant's statement that he didn't "want to get into it," that context indicates that Defendant's statement was not an invocation of his right to remain silent.

Finally, Defendant himself acknowledges towards the end of his interrogation (and after his incriminating statements have been made) that his initial waiver of his right to remain silent was still effective, and he further acknowledges that his statements can be used against him. (Video at 18:50.10-18:50.35 hrs.) As noted above, the initial waiver was express and is not contested. It is clear from both the verbal and nonverbal indicators caught on video that Defendant understood his right to remain silent and understood that he could

waive that right. Having knowingly and voluntarily waived his right, Defendant understood that he could later invoke the right, but he elected not to do so. Defendant believed that his interests would be better served by complete candor and openness with the interviewing officers. Defendant cannot now, having altered his position, retroactively invoke his right to remain silent.

### III. Conclusion

For the reasons stated above, Defendant's motion to suppress will be denied. An order consistent with this opinion will be entered.


Dated: June 30, 2011                                  /s/ Robert Holmes Bell
                                                                       ROBERT HOLMES BELL
                                                                       UNITED STATES DISTRICT JUDGE